## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTINA LYNN ENGLISH
302 Sunset Rd.
West Reading, PA 19611

             Plaintiff,

             v.

PYRAMID CONSULTING
INTERNATIONAL, LLC
2350 Green Road, Suite 175C
Ann Arbor, MI 48105

             Defendant.

             JURY DEMANDED

             No.

## CIVIL ACTION COMPLAINT

### I. Parties and Reasons for Jurisdiction.

1. Plaintiff, Christina Lynn English, is an adult individual residing at the above address.

2. Defendant, Pyramid Consulting International (hereinafter "Pyramid") is a Limited Liability Company organized and existing under the laws of the state of Michigan, not registered to do business in Pennsylvania, and with a principle place of business at the above address.

3. This action is instituted pursuant to Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and applicable federal and state law.

4. Plaintiff exhausted her administrative remedies pursuant to the Equal Employment Opportunity Act and Pennsylvania Human Relations Act. (See Exhibit "A," a true and correct copy of a dismissal and notice of rights issued by the Equal Employment Opportunity Commission.)

5.    Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

6.    Supplemental jurisdiction over the Plaintiff's state law claims is conferred pursuant to 28 U.S.C. § 1367.

7.    Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district. Plaintiff was working for Defendant in the Eastern District of Pennsylvania at the time of the illegal actions by Defendant as set forth herein.

8.    At all times material hereto, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## II. Operative Facts.

9.    On or about March 12, 2018, Ms. English was hired by Defendant as a Project Control Analyst.

10.    Ms. English was qualified for her position as a Project Control Analyst as she was hired for the position based on her background.

11.    Immediately upon the initiation of her employment with Defendant, Ms. English recognized and experienced discrimination that was clearly based solely on her gender.

12.    Ms. English was not provided proper training from John Prevost another employee of Defendant who was tasked with supervising Ms. English.

13.    Defendant also withheld office supplies, work assignments, and even building access from Ms. English, while providing all these to her male counterparts.

2

14.   Despite Ms. English's request for assignments, her requests were continually ignored.

15.   When Ms. English was provided with assignments to complete, she was not provided with the proper materials from Defendant to adequately complete the work that was assigned.

16.   As a result, Ms. English was penalized by Defendant for the work she was assigned being incomplete.

17.   Defendant's disparate treatment of Ms. English was clearly on display when Defendant hired a male employee, Anthony, and  Defendant provided him with training, consistent assignments, and materials and information necessary to complete the assignment.

18.   Ms. English also experienced disparate treatment in other aspects of her job as well.

19.   Defendant would often schedule team meetings, only to cancel them shortly before the meeting and reschedule them at times when only the male employees were available.

20.   In fact, the female employees would often not be notified of the new meetings.

21.   The harassment of Ms. English occurred in front of her colleagues as well.

22.   During a staff meeting, one of Ms. English's managers, Manu Akula, yelled at Ms. English to "shut your mouth" and "not interrupt [him]."

23.   This scolding occurred after Ms. English acknowledged in agreement what Mr. Akula had stated.

24.   Ms. English never witnessed any of her male counterparts being scolded by Defendant's employees.

3

25.    Ms. English was not the only female employee of Defendant to experience harassment and disparate treatment.

26.    Another female co-worker of Ms. English, Erin Wood, experienced the same lack of training as Ms. English and was forced to sit on the floor of Defendant's Akron, Ohio office while the males all had desks to use.

27.    Ms. Wood was also sexually harassed by Mr. Prevost.

28.    Ms. Wood made numerous complaints with Defendant regarding the disparate treatment that the female employees received.

29.    In order to quiet the female employees' complaints, Defendant hired Karen F. Andrews of The Andrews Group to investigate Ms. Wood's claims.

30.    Upon information and belief, Ms. Andrews' investigation concluded that sexual harassment and disparate treatment due to sex were rampant at Defendant.

31.    Upon information and belief, Ms. Andrews provided Defendant with recommendations on how to correct the issues.

32.    Despite these recommendations, Defendant chose to ignore Ms. Andrews and not implement any corrective action, thereby letting the harassment and disparate treatment to continue.

33.    On or about October 11, 2018, Ms. English filed a workers compensation claim due to an injury she received while working at Defendant.

34.    Two weeks after Ms. English filed for workers compensation, she was placed on a performance plan by her new supervisor, Phil Berry.

35.    Ms. English questioned why she was being placed on a performance review as she had just received her mid-year review with her previous supervisor, Peter Folga, for which she did not receive any complaints regarding her performance.

36.    In response, Mr. Berry advised Ms. English that it was "out of his hands."

37.    On or about January 7, 2019, Ms. English was scheduled to meet with Mr. Berry at Defendant's Reading, Pennsylvania office regarding her performance plan.

38.    An hour before the meeting Mr. Berry sent a text message to Ms. English asking her to come to the hotel he was at instead.

39.    When Ms. English arrived to the hotel, she was met by Defendants President, Sherif Farghal, and Mr. Berry.

40.    Ms. English's employment was terminated on the spot and she was requested to return her badge and laptop.

41.    Ms. English believes that her termination had nothing to do with her performance but rather her sex along with her worker's compensation claim.

## COUNT I
## TITLE VII CLAIM—DISCRIMINATION
### (42 U.S.C.A. § 2000e-2(a))

42.    Plaintiff incorporates paragraphs 1-41 as if fully set forth at length herein.

43.    Defendant took adverse action against Plaintiff through its harassment and the eventual termination of Plaintiff's employment.

44.    Plaintiff's status as a female places her in a protected class.

45.    Plaintiff's membership in a protected class was a motivating factor in Defendant's decision to harass and ultimately terminate her employment.

5

46.     Plaintiff suffered disparate treatment by Defendant, as set forth above.

47.     As such, Defendant's decision to harass, treat Plaintiff and other female co-workers differently than similarly situated male co-workers, and ultimately terminate Plaintiff's employment is an unlawful employment practice, under 42. U.S.C. § 2000e-2(a).

48.     As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

49.     As a result of the conduct of Defendant, Plaintiff hereby demands punitive damages.

50.     Pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), et seq., Plaintiff demands attorneys' fees and court costs.

## COUNT II
## PENNSYLVANIA HUMAN RELATIONS ACT CLAIM - DISCRIMINATION
### 43 P.S. § 951-963

51.     Plaintiff incorporates paragraphs 1-50 as if fully set forth at length herein.

52.     At all times material hereto, and pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq, an employer may not discriminate against an employee based on sex.

53.     Plaintiff is a qualified employee and person within the definition of Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

54.     Defendant is Plaintiff's "employer" and thereby subject to the strictures of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

6

55.     Defendant's conduct in harassing Plaintiff, its disparate treatment of Plaintiff and termination of Plaintiff's employment are an adverse actions, were taken as a result of her sex and constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

56.     As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

57.     As a result of the conduct of Defendant's owners/management, Plaintiff hereby demands punitive damages.

58.     Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq Plaintiff demands attorneys' fees and court costs.

## COUNT III
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

59.     Plaintiff incorporates paragraphs 1-58 as if fully set forth at length herein.

60.     Defendant was Plaintiff's employer.

61.     Plaintiff termination was in violation of the fundamental public policy of the Commonwealth of Pennsylvania as stated by the Pennsylvania Supreme Court in *Shick v. Shirey*, 716, A.2s 1231 (Pa. 1998), where an employee has a common law cause of action for which relief may be grated for discharge in retaliation for filing a workers' compensation claim.

62.     Defendant terminated Plaintiff on account of her application for workers compensation benefits as a result of the injury she received while she was at work.

7

63.   Defendant's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

64.   As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as personal injury, emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

**WHEREFORE**, Plaintiff, Christina Lynn English, demands judgment in her favor and against Defendant, Pyramid Consulting International, LLC, in an amount in excess of $150,000.00 together with:

A.   Compensatory damages, including but not limited to: emotional distress, pain and suffering, personal injury damages, economic loss, lost wages and benefits, lost future earnings and lost future earning capacity;

B.   Punitive damages;

C.   Treble damages;

D.   Attorney's fees and costs of suit;

E.   Interest, delay damages; and,

F.   Any other further relief the Pennsylvania Human Relations Commission deems just proper and equitable.

LAW OFFICES OF ERIC A. SHORE, P.C.

BY: _____

**ROBERT H. GRAFF, ESQUIRE** (PA I.D. 206233)
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Ph: 267-546-0138
Fx: 215-944-6124
*Attorney for Plaintiff, Christina Lynn English*

Date: 3/19/2020

9

# EXHIBIT "A"

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  **Christina Lynn English**
     **530 Penn Ave 2nd Fl**
     **West Reading, PA 19611**

From:  **Philadelphia District Office**
       **801 Market Street**
       **Suite 1300**
       **Philadelphia, PA 19107**

[  ]  *On behalf of person(s) aggrieved whose identity is*
      *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2019-02594** | **Legal Unit,** <br> **Legal Technician** | **(267) 589-9700** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ X ]  More than 180 days have passed since the filing of this charge.

[  ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[ X ]  The EEOC is terminating its processing of this charge.

[  ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[  ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[  ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

02/2820

*Jamie R Williamson*

Enclosures(s)

**Jamie R. Williamson,**
**District Director**

*(Date Mailed)*

cc:

**Sherif Farghal**
**CEO**
**PYRAMID CONSULTING INTERNATIONAL**
**2350 Green Road Suite 175c**
**Ann Arbor, MI 48105**

**Robert H. Graff**
**LAW OFFICES OF ERIC A. SHORE**
**Two Penn Center, Suite 1240**
**1500 John F. Kennedy Blvd**
**Philadelphia, PA 19102**